Kevin Mahoney, Esq. (SBN: 235367)
kmahoney@mahoney-law.net
John A. Young (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400

Attorneys for Plaintiff GERARDO TELLEZ, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO TELLEZ, as an individual, and on behalf of all similarly situated employees,<br><br>    Plaintiff,<br><br> v.<br><br>HARVEST LANDSCAPE ENTERPRISES, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No.: 20-CV-00438-GW-SK<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SETTING OF FINAL APPROVAL HEARING**<br><br>Assigned to for all purposes<br>Hon. George H. Wu, Courtroom 9D<br><br>Date:  April 1, 2021<br>Time:  8:30 a.m.<br>Courtroom: 9D<br><br>Complaint Filed: October 18, 2019<br>Trial Date: None Yet Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 1, 2021 at 8:30 a.m., pursuant to Federal Rule of Civil Procedure 23, Plaintiff GERARDO TELLEZ ("Plaintiff") will move the Court for an Order granting preliminary approval of the proposed class action settlement between Plaintiff and Defendant HARVEST LANDSCAPE ENTERPRISES, INC. ("HLE" or "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), which is memorialized in the Parties' "Stipulation of Settlement." ("Settlement Agreement" or "Agreement").

Plaintiff will further move the Court for an Order:

1.   Certifying for settlement purposes only a Class defined as all persons who are employed or have been employed by HLE in California as nonexempt employees at any time on or between June 9, 2016, to the date of preliminary approval of this settlement by the Court (the "Class Period");

2.   Preliminarily approving the PAGA Settlement Amount;

3.   Appointing GERARDO TELLEZ as Class Representative for settlement purposes;

4.   Appointing Plaintiff's counsel, Kevin Mahoney and John Young of MAHONEY LAW GROUP, APC, as Class Counsel for settlement purposes;

5.   Approving Phoenix Class Action Administrators as Settlement Administrators;

6.   Approving the form and content of the Class Notice and Notice of Individual Settlement Share (collectively referred to as the "Notice Packet"), and directing the mailing of same;

NOTICE OF MOTION FOR PRELIMINARY APPROVAL

7.    Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

8.    Directing Defendant to furnish the Settlement Administrator within ten (10) calendar days after the Court grants preliminary approval of the Settlement the Class List, as defined in the Settlement Agreement, which shall be compiled in good faith from Defendant's records to include for each Class Member: (a) full name; (b) last known mailing address; (c) last known telephone number; (d) social security number; (e) date of birth; and (f) the total workweeks worked by each member of the Settlement Class during the Class Period; and

9.    Setting a Final Approval Hearing.

The motion will be based upon this notice, the attached memorandum of points and authorities, the Declaration of Kevin Mahoney concurrently filed herewith, the records and files in this action, and any other further evidence or argument that the Court may properly receive at or before the hearing.

Dated: March 16, 2021          **MAHONEY LAW GROUP, APC**

By:    */s/Kevin Mahoney*
        Kevin Mahoney, Esq.
        John A. Young Klein, Esq.
        Attorneys for Plaintiff GERARDO TELLEZ as an individual and on behalf of all similarly situated employees

Page(s)

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .....................................3

  A.  The Parties ................................................................ 3

  B.  Factual and Procedural History ............................................ 3

  C.  Plaintiff' Claims. ...........................................Error! Bookmark not defined.

    1.  The Minimum Wage and Overtime Wage Claims Error! Bookmark not defined.

    2.  The Meal Break Claim ...................................Error! Bookmark not defined.

    3.  The Rest Break Claim ...................................Error! Bookmark not defined.

    4.  The Wage Statement Claim ..........................Error! Bookmark not defined.

    5.  The Waiting Time Claim ...............................Error! Bookmark not defined.

    6.  The UCL Claim ...........................................Error! Bookmark not defined.

    7.  Failure to Reimburse for Necessary Business Expenses Error! Bookmark not defined.

    8.  The PAGA Claim ..........................................Error! Bookmark not defined.

III.  SUMMARY OF SETTLEMENT TERMS .................................................5

IV.  CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ............11

  A.  The Proposed Settlement Was the Product of Serious, Informed, Non-Collusive Negotiations .................................................... 17

    1.  The Extent of Discovery Completed and The Stage of Proceedings ....17

  B.  The Proposed Settlement Has No Obvious Deficiencies ................ 18

  C.  The Proposed Settlement Does Not Improperly Grant Preferential Treatment  to the Named Plaintiff or Segments of the Class ................ 19

  D.  The Proposed Settlement Falls Within the Range of  Possible Approval Error! Bookmark not defined.

    1.  The Substantial Amount Offered in Settlement and The Risk, Expense and Complexity of Further Litigation Weigh in Favor of Preliminary Approval ........................................Error! Bookmark not defined.

VII.  CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE.................................................................................22

**A. Numerosity** .............................................................Error! Bookmark not defined.

**B. Common Issues of Law and Fact** .......................Error! Bookmark not defined.

**C. Typicality** .................................................................Error! Bookmark not defined.

**D. Adequacy of Representation** ...............................Error! Bookmark not defined.

**E. Conditional Certification Pursuant to Fed.R.Civ.P. 23(b)(3) is Appropriate as Common Questions Predominate** Error! Bookmark not defined.

**VIII. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS** ...................................................................................................**28**

**IX. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED** ..........**30**

**X. CONCLUSION** ..................................................................................................**30**

**TABLE OF CONTENTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

Cases

*Alberto v. GMRI, Inc.,*

(E.D. Cal. 2008) 252 F.R.D. 652 ........................................................................ 14

*Amchem Prod., Inc. v. Windsor,*

521 U.S. 591 (1997) ................................................................................... 22, 23

*Armenta v. Osmose,*

37 Cal.Rptr.3d 460, 465 (2005)………………………………..………14

*Arnold v. United Artists Theatre Circuit, Inc.,*

(N.D. Cal. 1994) 158 F.R.D. 439 ..................................................................... 19

*Choate v. Celite Corp.,*

Cal.App.4th 1460, 1468 (2013)……………………………………………12

*Class Plaintiffs v. City of Seattle,*

(9th Cir. 1992) 955 F.2d 1268 ......................................................................... 14

*Dawson v. Hitco Carbon Composites, Inc.,*

2019 U.S. Dist. LEXIS 204318, at *1 (C.D. Cal. July 9, 2019)……………..…8

*General Telephone Co. of Southwest v. Falcon,*

(1982) 457 U.S. 147 .......................................................................................... 20

*Hanlon v. Chrysler Corp.,*

(9th Cir. 1998) 150 F.3d 1011 ....................................................................Passim

*Kao v. Holiday*

12 Cal.App.5th 947, 963 (2017)……………………………………………..13

*In re Southern Ohio Correctional Facility,*

(S.D. Ohio 1997) 175 F.R.D. 270 ..................................................................... 16

*In re Tableware Antitrust Litigation,*

(N.D. Cal. 2007) 484 F.Supp.2d 1078 ........................................................ 14, 17

*Ingram v. The Coca-Cola Co.,*

(N.D. Ga. 2001) 200 F.R.D. 685 ....................................................................... 16

*Lerwill v. Inflight Motion Pictures, Inc.*,
  (9th Cir. 1978) 582 F.2d 507 ................................................................. 19

*Linney v. Cellular Alaska Partnership*,
  (9th Cir. 1998) 151 F.3d 1234 ............................................................... 15

*Molski v. Gleich*,
  (9th Cir. 2003) 318 F.3d 937 ........................................................... 13, 15

*Naranjo v. Spectrum Security Services, Inc*.,
  40 Cal. App. 5th 444 (Cal. App. 2d Dist., Sept. 26, 2019)……………………12

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  (9th Cir. 1982) 688 F.2d 615 ................................................................. 17

*Rangel v. PLS Check Cashers of Cal., Inc.*,
  899 F.3d 1106, 1111 (9th Cir. 2018)……………………………….10, 16, 18, 21

*Van Vranken v. Atlantic Richfield Co.*,
  (N.D. Cal. 1995) 901 F.Supp. 294 ......................................................... 16

*Vasquez v. Packaging Corp.*
  2020 U.S. Dist. LEXIS 224590, at *17 (C.D. Cal. Aug. 17, 2020)…………..9

*Villegas v. J.P. Morgan Chase & Co.*,
  (N.D. Cal., Nov. 21, 2012, No. CV 09-00261 SBA EMC) 2012 WL 5878390 . 14

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) …………………………………………..2, 5, 24

*Wehner v. Syntex Corp.*,
  (N.D. Cal. 1987) 117 F.R.D. 641 ......................................................... 20

Statutes

28 U.S.C. § 1331 ....................................................................................... 3
28 U.S.C. §1441 (a) .................................................................................. 3
28 U.S.C. § 1442(a)(1)................................................................................ 3

**TABLE OF CONTENTS AND AUTHORITIES**

29 U.S.C. § 201 .................................................................................... 12

29 U.S.C. § 206 ............................................................................. 1, 2, 4

29 U.S.C. § 207 ................................................................................ 2, 3

Cal. Lab. Code § 226.7(a) & (b) ................................................ 2, 7, 8

Cal. Lab. Code § 1174 ..................................................................... 2, 6

Cal. Bus. & Prof. Code § 17200 ................................................... 2, 10

Rules

Fed. R. Civ. P. 23(b)(3)...................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 24

Fed. R. Civ. P. 23 .......................................................................... 2, 24

Fed. R. Civ. P. 23 (a)(1) .................................................................... 24

F Fed. R. Civ. P. 23 (e) ...................................................................... 23

Fed. R. Civ. P. 23 (e)(2) .................................................................... 23

Fed. R. Civ. P. 23 (e)(1)(B) ............................................................... 24

Regulations

29 C.F.R. § 778.315 ............................................................................. 5

29 C.F.R. §778.316 .............................................................................. 5

29 C.F.R. § 778.317 ...................................................................... 5, 16

California Code of Regulations, § 11040 (4).......................................... 2

Other Authorities

*Manual for Complex Litigation,* § 21.632 (4th ed. 2004)..................... 14

**TABLE OF CONTENTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff GERARDO TELLEZ ("Plaintiff") submits this memorandum in support of his unopposed Motion for Preliminary Approval of Class Action Settlement. The Parties negotiated the proposed Settlement at arms' length. It is fair and reasonable and will dispose of this class action in its entirety.

## I.     INTRODUCTION

Plaintiff, a formerly employed maintenance worker of Defendant Harvest Landscape Enterprises, Inc. (hereinafter "Defendant" or "HLE"), filed this wage and hour class action, alleging that Defendant violated California labor laws by failing to pay wages for all hours worked, failing to pay overtime, failing to provide lawful meal breaks, failing to provide lawful rest breaks, failing to timely pay wages to employees whose employment had terminated, and failing to provide accurate itemized wage statements. Plaintiff further alleges that Defendant violated the unfair competition law (Bus. & Prof. Code § 17200, *et seq.*), California Private Attorney Generals Act ("PAGA"), and the Fair Labor Standards Act. Plaintiff brought this class action lawsuit on behalf of himself and all currently and formerly employed non-exempt hours employees of Defendant in the state of California from four (4) years prior to the commencement of this action through present. Plaintiff now seeks preliminary approval of the Joint Stipulation for Class Action Settlement (hereinafter "Agreement"), which will resolve this action in its entirety.

If approved by the Court, the Settlement will create a gross settlement fund (hereinafter referred to as "Gross Settlement Amount") in the amount of four hundred thousand dollars ($400,000.00) for approximately nine hundred fifty-nine (959)[1] employees. The Gross Settlement Amount includes payments made to Settlement Class Members, payments to the Labor and Workforce Development Agency ("LWDA"), settlement administration costs, awards of attorneys' fees and

---

[1] Plaintiff's prior Motion for Preliminary Approval contained a typo wherein Plaintiff stated there were 579 class members, however the actual number of class members is 959 (579 former employees and 380 current employees.)

MEMORANDUM OF POINTS AND AUTHORITIES

costs, and a service award to Plaintiff as set forth below. The Settlement is non-reversionary.  In order for Class Members to receive their share of the Settlement, Class Members will not be required to submit claim forms in order to receive their share of the settlement proceeds. Pursuant to the terms of the Parties' Settlement Agreement, Class Members will be provided with a court approved Notice describing the settlement in detail, which will include each Class Member's anticipated share of the settlement, premised on the Court's approval of administrative costs, attorneys' fees and costs, and Plaintiff's service award approved by the Court as requested ("Class Notice"). Following receipt of the Class Notice, the Class Members will have the option to elect not to participate in the settlement. If they do not affirmatively make that election, then each remaining Class Member will receive a settlement check after the "effective date" of the settlement is reached, following the Final Approval of the Settlement.

The Parties' settlement was reached following extensive exchange of information and investigation into Plaintiff's allegations, Defendant's wage and hour polices, Defendant's handbooks utilized during the relevant time period, and Plaintiff's and class members' time and payroll records, and after an all-day, arms-length mediation with experienced wage and hour mediator, Christopher Barnes, Esq. The settlement reached between the Parties takes into account the expense, complexity of continued litigation and risk that certification may not be granted and, if so, that it may not be maintained under principles outlined by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). In addition, the Parties' proposed settlement accounts for Defendant's affirmative defenses, which, if Defendant were successful would result in Plaintiff and class members receiving nothing.

Plaintiff therefore requests that the Court grant Plaintiffs Motion for Preliminary Approval of Class Action Settlement, approve the Notice Packet to Settlement Class Members, appoint Phoenix Class Action Administration

Solutions as the Class Administrator, and schedule a Final Approval Hearing. Plaintiff further requests that this Court provisionally certify a settlement class. Provisional certification is appropriate because the proposed class is ascertainable, common questions of law and fact predominate over any individualized questions, Plaintiff's claims are typical of those of the Stipulated Class Members, Plaintiff and his counsel can adequately represent the Stipulated Class Members, and proceeding as a class action is a superior means of resolving this dispute.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant is a landscape management firm providing a full array of landscaping and design services.

Plaintiff and the Plaintiff Class worked for Defendant in a non-exempt capacity, performing various landscaping duties, such as landscape maintenance, gardening, tree-trimming, concrete & masonry work, etc.

### B.    Procedural History and Plaintiff's Claims

On October 18, 2019, Plaintiff filed a representative action pursuant to the California Private Attorneys General Act (PAGA) in Orange County Superior Court, Case No. 30-2019-01105785-CU-OE-CXC. On February 28, 2020, Plaintiff filed an Amendment to his complaint to add claims for minimum wage and overtime violations pursuant to the Fair Labor Standards Act (FLSA), 29 USC sections 206-207. On March 3, 2020, Defendant removed the State action, Case No. 30-2019-01105785-CU-OE-CXC to this federal court based upon original jurisdiction under 28 U.S.C. §§ 1331 and 1441 (a), and pursuant to the federal officer removal statute under 28 U.S.C. § 1442(a)(1) (Case No. 8:20-cv-00438-GW-SK) (DKT 1.)

### C.    Mediation with Christopher Barnes

On January 24, 2020, the Parties attended a full day of mediation with Christopher Barnes, Esq., a well-known and experienced wage and hour class

action mediator. While the case did not settle at mediation, subsequently, following a mediator's proposal, the Parties agreed to the principal terms of this Settlement, which were subsequently formalized as a written "Stipulation of Settlement" ("Settlement Agreement" or "Agreement"), fully executed by the Parties on June 30, 2020 and subsequently revised and executed on March 15, 2021. (Declaration of Kevin Mahoney "Mahoney Decl." ¶ 4, Ex. A.)

Prior to the mediation, the Parties engaged in informal discovery as a means of minimizing litigation costs, as well as fostering a cooperative dynamic ahead of the substantive negotiations. Defendant provided to Plaintiff a random sampling of documents, including, but not limited to, time and pay records for the putative class, HLE's written policies and handbooks, and identified the number of employees comprising the putative class and/or aggrieved employees, as well as the relevant total workweeks and pay periods. (Mahoney Decl. ¶ 4.)

Using the aforementioned information and records, Plaintiff and his counsel consulted with an expert to review the time and pay records provided Defendant, as well as Defendant's financial documents, and were able to reasonably assess liability on the part of Defendant and the resulting value of damages, paving the way for the proposed settlement terms. Further, Defendant provided, on a confidential basis, information and documents relating to its financial status (including, balance sheets, a current valuation of HLE by an independent accounting firm retained by Defendant, and corporate tax returns for 2017-2018.) In turn, Plaintiff retained his own expert to review and analyze these financial records, in order to assess the extent to which Defendant could fund a settlement. (Mahoney Decl. ¶ 27.)

Factoring HLE's current value and profitability, its existing debt, and a prior class action against HLE, for which a settlement given final approval in June 2017 (*Renteria v. Harvest Landscape Enterprises, Inc.,* Orange County Superior Court Case No. 30-2010-00432253-CU-OE-CXE), Plaintiff and his counsel

determined that the agreed-upon sum of four hundred thousand dollars ($400,000.00) was a reasonable and appropriate gross settlement value for this instant action.  (Mahoney Decl. ¶ 24.)

Additionally, Defendant's current financial status, as demonstrated by the records provided, justified a thirty-month installment plan to fund the proposed settlement. (Mahoney Decl., ¶ 27, Ex. A.)

### D.    Court's Prior Denial of Plaintiff's Preliminary Approval Motion

On November 4, 2020, the Court denied Plaintiff's motion for preliminary approval on the basis that:

1.    Plaintiff did not provide sufficient information to establish commonality under *Dukes*;

2.    Discrepancy in the class size;

3.    The Court requested authority establishing the Parties plan to achieve opt-in membership for any FLSA collective action;

4.    The Court was concerned about treating class members with waiting time penalties claim the same as class members without waiting time penalties; and

5.    Plaintiff's reimbursement claim and implications of class members releasing the claim.

Plaintiff intends to address the aforementioned issues in the following motion and declarations filed contemporaneously with this motion.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    Monetary Terms

In consideration for the releases of all claims at issue, Defendant agrees to pay an amount not to exceed four hundred thousand dollars ($400,000.00) (the "Gross Settlement Amount"), excluding Defendant's side of payroll taxes (which Defendant will pay separately), as a full and complete settlement of all claims arising from the action all persons who are employed or have been employed by

HLE in California as nonexempt employees at any time on or between June 9, 2016, to the date of preliminary approval of this settlement by the Court ("Settlement Class Members"). The Gross Settlement Amount includes payments made to Settlement Class Members, settlement administration costs, awards of attorneys' fees and costs, the service award for Plaintiff, and payment to the LWDA. The Gross Settlement Amount shall be allocated as follows:

- Administration will be handled by Phoenix Class Action Administrators, a third-party settlement Administrator, and the cost of the Administration shall not exceed ten thousand dollars ($10,000.00)[2] and will be paid out of the Gross Settlement Amount (Mahoney Decl., Ex. A);

- Defendant will not oppose an application for a class representative Enhancement Payment in the amount of six thousand dollars ($6,000.00), to be paid out of the Gross Settlement Amount (Mahoney Decl., Ex. A);

- Defendant will not oppose Class Counsel's application for a Class Counsel Fees Award that is up to one hundred twenty thousand dollars ($120,000.00), which is 30% of the Gross Settlement Amount and Class Counsel Costs Award not to exceed eight thousand dollars ($8,000.00) (Mahoney Decl., Ex. A);

- Ten thousand dollars ($10,000.00) from the Gross Settlement Amount to compromise of claims brought under the Private Attorneys General Act of 2004, California Labor Code section 2698 et seq. California Labor Code section 2699(i) requires that the parties distribute any settlement of PAGA claims as follows: 75% to the State of California's Labor Workforce Development Agency for

---

[2] Plaintiff's prior quote for $8,000 from Phoenix Class Action Administrators was for 575 employees (the number of formerly employed class members). The revised quote in the amount of $10,000 reflects the accurate number of Class Members (979).

MEMORANDUM OF POINTS AND AUTHORITIES

enforcement of labor laws and education of employers; and 25% to "aggrieved employees." Accordingly, the Parties agree that seven thousand five hundred dollars ($7,500.00) of the LWDA PAGA Allocation will be paid to the Labor Workforce Development Agency from the Gross Settlement Fund by the Claims Administrator. The remaining two thousand five hundred dollars ($2,500.00) of the LWDA PAGA Allocation will be part of the Net Settlement Fund to be distributed in accordance with the terms of this Settlement.

- As detailed above, Defendant's financial situation necessitates the need for a payment plan. A declaration supporting Defendant's need for a payment plan will be filed contemporaneously with this motion. The Gross Settlement Amount will be paid over the course of thirty (30) equal monthly payments in the amount of thirteen thousand three hundred thirty-three dollars and thirty-three cents ($13,333.33) as follows: The first payment of thirty (30) payments funding the Gross Settlement Amount will be paid within ten (10) days following the Court's final approval of this Settlement; and the second payment of the Gross Settlement Amount will be paid within thirty (30) days after the date on which the first payment was made. The remaining twenty-eight (28) payments of the Gross Settlement Amount will be paid within thirty (30) days of the preceding payment.

**B.  Settlement Class Members' Released Claims**

As of the full funding of the Gross Settlement Fund, Settlement Class Member, on behalf of himself or herself and his or her heirs and assigns, unless he or she has properly elected to opt out of the Settlement hereby releases Defendant from the following claims for the entire Class Period (from June 9, 2016, through the date of Preliminary Approval); any and all claims reasonably related to claims in the Action, including but not limited to state and/or federal wage and hour

claims (including all claims under the California Labor Code and the Fair Labor Standards Act) for unpaid wages, unreimbursed business expenses, minimum wage, overtime, off-the-clock work, meal periods, rest periods, wage statement violations, interest, penalties, and attorneys' fees, waiting time penalties, withholding from wages and the related provisions of the Labor Code including but limited to Labor Code sections 201, 202, 203, 204, 210, 216, 218.6, 226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1198, 2698 *et seq*., and 2802, derivative claims under California Business & Professions Code Sections 17200 *et seq*. and all claims under the Wage Order, and the Private Attorneys General Act of 2004, Labor Code section 2698 *et seq*. ("PAGA"); and any and all claims that were or could have been asserted based on the facts pleaded in the Complaint or any amendments thereto for any purported violation of any local, state, or federal wage and hour laws, regulations, and/or ordinances, including such laws, regulations, and/or ordinances related to the non-payment of wages, minimum wages, overtime wages, or any other wage-related or recordkeeping-related claims; liquidated damages; attorneys' fees, costs and expenses; pre- and post-judgment interest; or damages or relief of any kind arising from the allegation that the Class Members were not properly compensated for all time worked on a daily or weekly basis, under state or federal law, at any time through Preliminary Approval.

### C.    Settlement Class Members' Released FLSA Claims

The Court requested Plaintiff to provide legal authority supporting the proposition that the cashing/endorsement of a check can operate as consent to join an FLSA collective action. As discussed in full below, numerous courts have held the cashing/endorsement of a check may constitute consent to join an FLSA collective action. Moreover, bedrock principles of California law compel the conclusion that parties to a lawsuit may settle state law claims and related FLSA claims with such an opt-in mechanism, or indeed, without one. Allowing related

federal claims to remain will effectively "federalize" California state wage and hour law and abolish any incentive to settle California state law claims like those at issue here.

In fact, California courts routinely hold that by cashing/endorsing a check, a class member has opted-in, or consented to join, for purposes of waiving even unpled FLSA claims. For example, in *Dawson v. Hitco Carbon Composites, Inc.*, 2019 U.S. Dist. LEXIS 204318, at *1 (C.D. Cal. July 9, 2019), the plaintiff could have pursued his wage and hour claims under state law and the FLSA, but he elected to pursue only state law claims. *Id.*, at *2. The parties negotiated a class wide settlement in which class members released all claims "that have been or could have been alleged or asserted" based on the alleged facts, including "violation of the federal Fair Labor Standards Act." *Id.* at *16-17. The settlement agreement further provided that "Class Members will be deemed to have opted-in to the settlement for purposes of the FLSA 'by operation of cashing, depositing, or otherwise negotiating their Individual Settlement Payment check.'" *Id.* at *17 (quoting settlement agreement). The court granted preliminary, and later, final approval of that settlement.

Further, *Vasquez v. Packaging Corp.*, 2020 U.S. Dist. LEXIS 224590, at *17 (C.D. Cal. Aug. 17, 2020) is in accord. There, the parties settled a state law wage and hour class action and included a provision which provided that all class members who negotiated a settlement check would, by their signature, consent to a release of any unpled FLSA claims. 2020 U.S. Dist. LEXIS 224590, at *16. To achieve this, "each settlement check" contained the following statement:

> I understand that by cashing, depositing, or otherwise negotiating this check I will be deemed to have opted into *Vasquez v. Packaging Corporation of America* (Case No. 2:19-CV-01935-PSG-PLA) for purposes of [the FLSA]

to the extent required to do so under applicable law for purposes of the court-approved settlement therein.

*Id.*   Based in part on this provision, the Court found "that the Settlement Agreement is adequate" and "contains a proper FLSA waiver." *Id.*[3]   Accordingly, here the Parties' agreement, which provides class members who cash the settlement check release claims they may have under the FLSA, is proper. The Court should grant approval of this mechanism to release FLSA claims.

In addition, although parties typically invoke res judicata principles when addressing a subsequent action, those principles dictate the proper scope and extent of the release at the approval stage. By clearly stating the scope of the release (i.e., its res judicata effect) in the settlement agreement and class notice, the Court and Parties provide putative class members a more accurate picture of how the release may impact their rights. Armed with that information, putative class members can decide whether to opt out or object, and they are less likely to file later actions the release bars, at the expense of judicial and party resources.

Further, California's "primary right" theory is instructive as detailed in *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018). In *Rangel*, the Ninth Circuit held that a class member who released state law wage and hour claims could not relitigate those claims under the FLSA. The court reasoned that "FLSA claims" are merely "federal versions of the state law claims" and involve "the same injury to the same right." *Id.*[4] Under blackletter law, "[e]ven where there are multiple legal theories upon which recovery might be predicated,

---

[3] When the plaintiff asserts an FLSA claim, Courts routinely hold that a class member's act of cashing/endorsing a settlement check is sufficient to consent to waive FLSA claims. *See, e.g., Lazarin v. Pro Unlimited, Inc.*, 2013 U.S. Dist. LEXIS 97213 at *7 (N.D. Cal. July 11, 2013) ("Class members opt in to the FLSA Class, and release their claims under the FLSA, by cashing their settlement checks."); *Sarkisov v. Stonemor Partners L.P.*, 2015 U.S. Dist. LEXIS 34511 at *9-10 (N.D. Cal. Mar. 18, 2015) (approving class settlement in which "class members who have cashed their settlement checks, and thus have 'opted in,' will be deemed to have released their FLSA claims..." [citations omitted]); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) (approving release of FLSA claims where language "on the back of the check" indicated that negotiating it "shall be the opt-in consent required by the FLSA").
[4] Internal quotations and citations omitted.

MEMORANDUM OF POINTS AND AUTHORITIES

one injury gives rise to only one claim for relief." *Id.* Accordingly, a judgment under one legal theory "is a bar to a subsequent action . . . based on the same injury to the same right, even though [the plaintiff] presents a different legal ground for relief." *Id.* That the FLSA requires an opt-in mechanism to *litigate* "has no impact on the California primary rights analysis. The same injuries to the same rights are at issue in both cases." *Id.* [5]

In sum, whether expressly released or not—and with or without opt-in consent— if Plaintiff proceeds to obtain a approval and a judgment for the alleged unpaid wage claims it extinguishes related or corollary FLSA unpaid minimum wage and unpaid overtime claims. Accordingly, there is no reason why parties cannot *expressly* release a claim that the operation of law *will release* in any event.

## IV.    PLAINTIFF'S    CLAIMS    AND    ASSESSMENT    OF    THE    SETTLEMENT VALUE

This Settlement represents a significant guaranteed recovery for all the Settlement Class Members. In advance of mediation, Defendant agreed to, and did, provide Plaintiff with informal discovery relating to the size and scope of the class, total work-weeks in the class period, average pay rate, meal period premiums paid, Settlement Class Members' time records and pay records, Defendant's employee handbooks containing Defendant's wage and hour policies. (Mahoney Decl. ¶ 4.)

Plaintiff contends that Defendant implemented policies of discouraging

---

[5] The Fifth Circuit, applying California law, reached the same conclusion upon analyzing the issue. *See Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 449 (5th Cir. 2016) (finding "state court approved . . . opt out class action settlement that released FLSA claims" would "preclude the California Plaintiffs' FLSA claims"). Courts in other jurisdictions have reached the same conclusion as well. *Kuncl v. Int'l Bus. Machines Corp.*, 660 F. Supp. 2d 1246, 1254 (N.D. OK. 2009) ("[T]he court finds no basis either in § 216(b) or in the congressional intent behind the statute to hold that res judicata principles do not apply ... allowing Kuncl to litigate his misclassification claims [] twice would undermine the goals behind class actions and promote, rather than avoid, repetitious litigation"; "[section] 216(b) [of the FLSA] does not create an exception to the res judicata doctrine."); *See, e.g., Klein v. Ryan Beck Holdings, Inc.*, 2007 WL 2059828 (S.D.N.Y. July 13, 2007) (argument that "a decision rendered on the [state law] class action claims could have preclusive effect on FLSA claims-amounts to little more than a quarrel with the doctrine of res judicata … no provision of the FLSA bars the application of res judicata when the same party requirement is satisfied, as would be the case when a person allows his state law claims to be adjudicated in a rule 23 class action.").

MEMORANDUM OF POINTS AND AUTHORITIES

workers to prioritized completing their assigned tasks in lieu of mandatory meal and rest periods.  In fact, during the Class Period, Defendant maintained a policy wherein Defendant required all overtime to be "pre-approved" by a supervisor. As a result, Defendant incentivized Plaintiff and Settlement Class Members to work during meal breaks to complete their maintenance responsibilities or risk being disciplined for working unapproved overtime and or working over eight (8) hours and not being compensated at an overtime rate if the overtime hours were not pre-approved by a supervisor.  As a result of Defendant's policies and practices incentivizing and permitting Plaintiff and Class Members to work off-the-clock during meal periods, minimum wage and overtime statute and regulations were violated.

Plaintiff alleges that despite Defendant's written meal and rest period policies, Defendant failed to adequately provide compliant meal or rest periods. (Mahoney Decl. ¶¶ 5, 8.)  In addition, the time records provided by Defendant regularly fail to delineate the start and end time non-exempt employees rest periods as required by Defendant's own policy. (Mahoney Decl. ¶ 8.)  The omission of recorded rest breaks pursuant to Defendant's own policy is indicative of facial rest period violations experienced by Plaintiff and Class Members. Accordingly, based on the pay records provided by Defendant, Defendant failed pay a rest period premium paid when a rest period was not recorded on Plaintiff's and Class Members' time records

Plaintiff contends that by failing to include in the final paychecks to former employees all wages as a result of Defendant's failure to comply with meal and/or rest period requirements as well as additional straight time and overtime compensation relating to the travel time and time spent working off-the-clock, Defendant violated Labor Code sections 201 and 202. Plaintiff further contends that Defendant failed to pay penalties for each day a former employee was not paid wages for all hours worked. Plaintiff also contends that Defendant willfully

failed to make or keep accurate payroll records for Plaintiff and class members because they did not accurately reflect the hours worked due to the alleged unpaid travel time, all premiums owed, and the time spent working off-the-clock. Plaintiff's claims for waiting time penalties and inaccurate wage statements contain certain risks as a result of their derivative nature.  If Plaintiff was not successful in certifying a class for unpaid wages and Plaintiff prevailed on the meal and rest periods claims, based on other Court's decisions regarding statutory penalties under Labor Code sections 203 (waiting time penalties) and 226 (inaccurate wage statement), they are not derivative of a successful claim for premium wages under Labor Code § 226.7. Pursuant to *Naranjo v. Spectrum Security Services, Inc*., 40 Cal. App. 5th 444 (Cal. App. 2d Dist., Sept. 26, 2019), the meal and rest period violations are not a predicate for civil penalties for improper wage statements and untimely final wages under Labor Code sections 201, 202, 203, 226, 226.3, and 2699. *Id.*

The Court previously raised concerns about Plaintiff's waiting time claim and compliance with Federal Rule of Civil Procedure 23(e)(2)(D). An employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness.  *Choate v. Celite Corp.* Cal.App.4th 1460, 1468 (2013). Further, a 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that good faith dispute exists. *Kao v, Holiday* 12 Cal.App.5th 947, 963 (2017).  Class Counsel discounted this claim based on risk and the fact that waiting time penalties are not awarded if a good faith dispute exists and Defendant alleges that Plaintiff would not have been able to prove Defendant "willfully" withheld wages. (Mahoney Decl. ¶ 14.)  Further, Defendant presented defenses based in law and fact that may preclude Plaintiff's and Class Members' recovery of waiting time penalties.  The equitably relative to each Class

Member and distribution of settlement payments is discussed more below.

Lastly, Plaintiff's alleged FLSA claims prove to provide little value to this settlement and Plaintiff's and Class Member's release of these FLSA claims should not prejudice Settlement Class Members. First, the FLSA is different from California's Labor Code as the FLSA permits employers to "average back" to determine compliance with minimum wage law, such that the obligation to pay minimum wage is determined back from the date that any payment is due, without individually counting each hour. As such, pursuant to the FLSA, Defendant could be considered in compliance with minimum wage law if maintenance workers' total weekly compensation exceeded the total hours worked multiplied by the applicable minimum wage. In contrast, the California Labor Code requires employers to pay minimum wages for each and every separate hour worked during the payroll period, such that payment must be made for all such hours on the established payday. *Armenta v. Osmose* 37 Cal.Rptr.3d 460, 465 (2005). Furthermore, the FLSA does not provide for penalties for non-compliant wage statements and or waiting time penalties.  As detailed above, the court should approve that Settlement Class Members who endorse, cash, or otherwise negotiate their settlement payment, will be deemed to have opted in for purposes of release FLSA claims as set forth in the Settlement Agreement.

Plaintiff plead in his Complaint(s) that Defendant required him and Class Members to use their personal cell phones for work-related purposes without reimbursement and likewise were required to use personal vehicles to transport supplies from Defendant's facility to work sites without reimbursement. (Mahoney Decl. ¶ 18.) Upon further investigation, including informal discovery produced by Defendant and a declaration from Defendant's agent contemporaneously filed herewith, it became apparent to Plaintiff and my office that individual issues such as whether Class Members were required to use cell phones for work, and whether Class Members were or were not provided with company vehicles raised questions

as to the commonality, typicality and numerosity in this case, warranting a valuation of this claim at a de minimis value for the purposes of settlement. (Mahoney Decl. ¶ 19.)  In addition to the Declaration of Kevin Mahoney in support of this motion, a declaration from Defendant will be contemporaneously filed with this motion associated with Plaintiff's evaluation of this claim.

Plaintiff also asserted that all of the claims alleged above against Defendant pursuant to PAGA.  As detailed in the Settlement Agreement the Parties are allocating ten thousand dollars ($10,000.00) to the settlement of PAGA claims. Accordingly, the release of those claims will not prejudice Settlement Class Members.

As Plaintiff's theories of liability are based on policies that apply to all non-exempt hourly maintenance workers uniformly, Plaintiff is confident class certification would be granted as to all causes of action. (Mahoney Decl. ¶ 24.)

Defendant denies all liability and contends that Settlement Class Members were paid all wages, provided meal and rest periods as required under California law, provided itemized wage statements, and reimbursed employees all necessary business expenses.   (Mahoney Decl. ¶¶ 7, 8, 12, 15, 16, 20.) In addition, Defendant contends its practices have been in compliance with applicable law as set forth above, and that Plaintiffs have no basis for asserting a claim under the Private Attorney General Act of 2004. (Mahoney Decl. ¶ 23.)  Defendant denies that, for any purpose other than settling this action, this matter is appropriate for class treatment. Defendant further contends that they have complied at all times with all applicable California laws, including the California Labor Code, the applicable California Wage Order(s), FLSA and the Unfair Competition Law. Defendant contends that if this action were to be litigated further, Defendant would have strong defenses to class certification and on the merits.  Accordingly, Plaintiff's counsel's opinion is that this settlement is a fair, adequate, and reasonable resolution of the claims in this lawsuit. (Mahoney Decl. ¶¶ 24-25.)

# V.    THE CLASS ACTION SETTLEMENT MEETS SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

A class action may not be dismissed, compromised, or settled without the approval of the court. (*See* Federal Rule of Civil Procedure 23(e).)    Judicial proceedings have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation,* § 21.632 (4th ed. 2004).    The *Manual*'s settlement approval procedure describes two distinct steps:

1. The Court first conducts a preliminary fairness evaluation, and if the Court preliminarily approves the settlement as falling within the range of possible settlement approval, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled.

2. A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. (*Id.*; Federal Rule of Civil Procedure 23(e)(2).

"Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval.'" (*Villegas v. J.P. Morgan Chase & Co.* (N.D. Cal., Nov. 21, 2012, No. CV 09-00261 SBA EMC) 2012 WL 5878390, at *5 (quoting *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079); *see also Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026; *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276 (in context of class action settlement, appellate court cannot "substitute [its] notion of fairness for those of the [trial]

judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion.)

Accordingly, a court's decision to approve a class action settlement may be reversed only upon a showing of clear abuse of discretion.  See *Hanlon*, *supra*, 150 F.3d at p. 1027.  By this motion, Plaintiff request that the Court take the first step in the settlement approval process, and grant preliminary approval of the Settlement.

**A.    The Proposed Settlement Was the Product of Serious, Informed, Non-Collusive Negotiations**

The proposed Settlement in this case was reached after extensive and informed arm's-length negotiations with experienced class action mediator Christopher Barnes, Esq. (Mahoney Decl. ¶¶ 4, 25.)

1.    <u>The Extent of Discovery Completed and The Stage of Proceedings</u>

In making a fairness determination, the Court looks to what discovery has been completed and the procedural posture of the litigation. (*Molski*, *supra*, 318 F.3d at p. 953.)   Rule 23(e)(2)(B) prevents a court from approving a class settlement unless it makes a finding that the Parties negotiated the settlement at arm's length. When litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval. (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1239.) So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases it need not be exhaustive. *See, e.g., In re Immune Response Secur. Litig.*, 497 F.Supp.2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).

Prior to the mediation, the Parties engaged in informal discovery where

Defendant provided a sampling of Class Members time records and payroll records, Plaintiff's time records and payroll records, Defendant's written policies and employee handbooks utilized during the class period, class size, workweeks, as well as financial documents relating to Defendant to allow Plaintiff's counsel to assess liability and value. (Mahoney Decl. ¶¶ 4, 27.)

Factoring HLE's current value and profitability, Defendant's existing debt, and a prior class action against HLE, for which a settlement given final approval in June 2017 (*Renteria v. Harvest Landscape Enterprises, Inc.,* Orange County Superior Court Case No. 30-2010-00432253-CU-OE-CXE), Plaintiff and his counsel determined that the agreed-upon sum of four hundred thousand dollars ($400,000.00) that was negotiated settlement through an experienced mediator and reached after significant data, information and documents were exchanged, is reasonable and appropriate settlement for this instant action.  (Mahoney Decl. ¶¶ 24-27.)

## B.    The Proposed Settlement Has No Obvious Deficiencies

A summary of the settlement terms is described above, and shows that there are no obvious deficiencies.  The proposed Settlement offers substantial monetary benefits to Participating Class Members in exchange for a release of certain wage and hour claims alleged in this action. There is no standard benchmark for adjudicating whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice, supra*, at 625 (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See, Linney v. Cellular Alaska P 'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("... it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.")

Plaintiffs submit that the settlement for each participating class member is fair, reasonable, and adequate given the inherent risk of litigation, the risk of class certification and costs of litigation. After deducting Class Counsel's proposed attorneys' fees of one hundred twenty thousand dollars ($120,000.00), Class Counsel's costs of up to eight thousand dollars ($8,000.00), the proposed Representative Enhancement Awards to Plaintiff in the requested amount of six thousand dollars ($6,000.00); the PAGA Settlement Allocation of ten thousand dollars ($10,000.00), 75% (or $7,5000.00) to be paid to the LWDA and the remaining 25% (or $2,500.00) to be distributed to PAGA Members; and Settlement Administration Costs not to exceed ten thousand five hundred dollars ($10,500.00) from the Gross Maximum Settlement Amount of four hundred thousand dollars ($400,000.00), the Net Settlement Amount is approximately two hundred forty-eight thousand five hundred dollars ($248,500.00).   With approximately 959 class members, the average amount each class member would receive is two hundred fifty-nine dollars and twelve cents ($259.12) per class member – assuming that no Class Members opt out of the Settlement. (Mahoney Decl. ¶ 26.)  Class Members will be mailed a Notice of Settlement and will have the ability to object to any of the terms of the proposed Settlement or exclude themselves from participating in the proposed Settlement.   Furthermore, the proposed Settlement is "all-in," and no monies will revert back to Defendant.

### C.    Balancing of the Factors

In making a fairness determination, a Court must evaluate factors such as: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. (*Molski v. Gleich* (9th Cir. 2003) 318

F.3d 937, 953.)  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton v. Boeing. Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Here, the proposed Settlement satisfies all of these factors. Plaintiff vehemently contends his claims have merit and if litigation were to continue his class would be certified. Both parties have engaged in sufficient discovery and conducted thorough investigations of Plaintiff s claims to determine the value of Plaintiff's claims and strength of Defendant's defenses. In addition, Defendant supplied Plaintiff informal discovery in order for Plaintiff's expert to calculate damage analysis prior to mediation.

This Settlement is only the result of considerable time and effort invest by the Parties spent evaluating the likelihood of getting this matter certified as a class action, in addition to the strength of Plaintiff's causes of actions and value of class recovery in comparison to the risks of not obtaining and maintaining class certification status, and the risks posed through the normal perils of litigation, including the affirmative defenses asserted by Defendant, Defendant's potential insolvency, the difficulties of complex litigation, the lengthy process of establishing specific damages, and various possible delays and appeals, that Plaintiff was able to agree to the proposed settlement reached at an arms-length mediation.

Plaintiff's counsel's opinion supporting this settlement is entitled to considerable weight. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery. *H&R Block Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also*, *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of

reasonableness). Plaintiff and his counsel have determined that the settlement set forth in the Agreement is a fair, adequate and reasonable settlement, and is in the best interests of Plaintiff and the Settlement Class. (Mahoney Dec. ¶¶ 24-26.) Defendant has also expended substantial amounts of time, energy and resources in connection with the litigation and mediation, and unless this settlement is approved, will continue to have to do so in further litigation. Defendant has, therefore, agreed to settle in the manner and upon the terms set forth in the Agreement, to put to rest the claims set forth in the Class Action.

### D. No Preferential Treatment Exists

The Court previously expressed concern that class members with a waiting time penalties claim will be treated exactly the same as those without such a claim under the Parties' Settlement. Rule 23(e)(2)(D) prevents a court from approving a class settlement unless it makes a finding that the settlement treats class members equitably relative to each other. Preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014).

Here, the individual settlement amounts paid to each Class Member based on his or her total number of workweeks on a pro rata basis regardless of the strength of their individual claims is fair and does not improperly grant preferential treatment to segments of the class. The Court's concern regarding equity between Class Members with waiting time claims and Class Members without waiting time penalty claims is of note, however, no segment of the class receives preferential treatment, regardless of whether may or may not have a certain claim. Further, although Class Members without waiting time claims

(current employees) may benefit from Class Members with waiting time claims (former employees), the former employees benefit from the current employees by continuing to work for Defendant and increasing the number of workweeks worked by Class Members, increasing the value of claims such as meal and rest break violations. Accordingly, this proposed settlement treats current and former employees equitable.

In addition, in wage-and-hour class cases, it is common to allocate funds based on the time worked by class members. *See, e.g., Cicero v. DirecTV, Inc.*, 2010 WL 2991486 (C.D. Cal. July 27, 2010), at \*5 ("the fund will be distributed based on the number of weeks worked by each class member, which appears to be a fair method of distributing the fund"); *Pierce v. Rosetta Stone, Ltd.*, No. 11-01283 SBA, 2013 WL 1878918, at \*6-7 (N.D. Cal. May 3, 2013). Here, the distribution plan is equitable to all Class Member's because all earned relatively the same hourly rate, performed the same type of work and were subjected to Defendant's purported illegal policies and practices. Although Plaintiff attributes a value to Plaintiff's waiting time penalties, the method to distribute the individual settlement amounts compensates Class Members based the length of their employment, and were subjected to more alleged violations, is fair, adequate, and reasonable. *See, e.g., Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at \*8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

## VI.    CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

The Parties have stipulated that the court may, for settlement purposes only, certify a Settlement Class. A proposed class may be conditionally certified if it "satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3)

typicality, and (4) adequacy of representation. (*Hanlon*, *supra*, 150 F.3d at p. 1019.) The party seeking certification of a proposed settlement class must also show that the action falls within one of the three subsections of Rule 23(b) relating to predominance of common questions and superiority of the class action mechanism. All of the requirements of Rule 23(a) and 23(b) are met here.

### A.    Numerosity

Federal Rule of Civil Procedure 23 (a)(1) requires that the class is so numerous that joinder of all members is impracticable. Numerosity does not require that joinder of all Members be impossible, but only that joinder be impracticable. (*Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440.) In this matter, the Settlement Class includes approximately 959 current and former employees, and therefore, numerosity is easily established.

Additionally, the proposed class must be ascertainable, and must identify, "a distinct group of plaintiffs whose members can be identified with particularity." (*Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1978) 582 F.2d 507, 512.) Here, the members of the proposed class can easily be identified through Defendant's own timekeeping and payroll records. Therefore, the settlement class is both sufficiently numerous and ascertainable.

### B.    Common Issues of Law and Fact

The commonality requirement is met if there are questions of law and fact common to the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"). Here, for purposes of the Settlement only, the parties agree that common factual and legal issues include, among other things: (1) whether Defendant engaged in a common course of failing to provide and/or compensate employees for all overtime hours worked, 2) provided all required meal and rest periods or compensation in lieu thereof; and (3) whether these alleged violations resulted in

ancillary violations of Lab. Code, § 203, and 226, as well whether they justify penalties under PAGA and support the basis for relief under the UCL. Furthermore, all Class Members suffer from, and seek redress for, the same alleged injuries. Under these specific circumstances, and for settlement purposes only, the commonality requirement is satisfied. (See *Id.* at p. 1019–20.) Further, the Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Therefore, to satisfy the commonality requirement, the claims must depend upon a common contention that "must be of such a nature that it is capable of class wide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of those claims in one stroke." *Dukes, supra*, 131 S.Ct. at 2551.

Contrary to the discrimination class claims asserted in *Dukes* ("involving millions of employment decisions at once" *Dukes, supra*, 131 S.Ct. at 2552), this action under these specific circumstances, and for settlement purposes, satisfies the commonality requirement as common questions exist. First, Plaintiff alleges that all Class Members were subject to the same or similar policies, practices and procedures and all performed the same type of work. Accordingly, common questions include, but are not limited to: whether Class Members paid all wages for all work performed; whether Defendant deprived Class Members from taking compliant meal and rest periods, and failed to pay the required premiums; whether Defendant knowing and intentionally failed to provide Class Members with accurate itemized wage statements pursuant to Labor Code section 226; and whether as a result of Defendant's uniform policies and practices Defendant failed to compensate Class Members all wages at the time of separation. The Ninth Circuit have found this sufficient for a showing of commonality. See *Dills v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (commonality exists

MEMORANDUM OF POINTS AND AUTHORITIES

where plaintiffs identified "common factual questions, such as whether [the] [defendants' policies deprived the ... class members of meal periods, rest periods, overtime pay, and reimbursement ... and common legal questions, such as [the] [d]efendants' obligations under [the] California Labor Code and California's Unfair Competition Law"); *Ching v. Siemens Industry, Inc.*, 2013 U.S. Dist. LEXIS 169279, *4 (N.D. Cal. 2013) (commonality satisfied where "issues facing the class arose from common questions involving defendant's calculation and payment of wages and overtime.); *Vanwagoner v. Siemens Industry, Inc.*, 2014 U.S. Dist. LEXIS 67141, *11 (N.D. Cal. 2014) (commonality satisfied where "[n]ot only does the class raise common questions, but the class action may generate a class-wide answer to the central issues: whether defendant's calculation and payment of wages and overtime were correct and whether defendant engaged in a uniform practice of denying meal and rest periods and denying reimbursements). Plaintiff alleges that all claims in this Action are based on common, class-wide policies and procedures, and that liability could accordingly be determined on a class-wide basis, without dependence on individual assessments of liability. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.) Accordingly, Plaintiff asserts that the answers to the aforementioned questions determine liability to all Class Members claims, wherein commonality is satisfied.

## C.    Typicality

The typicality requirement is met if the claims of the name representative is typical of those of the class, though "they need not be substantially identical." (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *Classen v. Weller*, 145 Ca1. App. 3d 27, 46-47 (1983).) Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of

typicality. (*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147; *Wehner v. Syntex Corp.* (N.D. Cal. 1987) 117 F.R.D. 641, 644.) This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal. 2010). The permissive standard of typicality focuses on similarity between the legal theories of the proposed class representatives and the legal theories of those class members they seek to represent. *See Tibbie v. Edison Int'l*, 711 F.3d 1061, 1074 (9th Cir. 2013). In deciding whether individual variations preclude typicality, the focus should be on the behavior of the defendants. *Day v. NLO*, 851 F.Supp. 869, 884 (S.D. Ohio 1994); *Capitol People First v. State Dept, of Developmental Services*, 155 Cal. App. 4th 676, 692-93 (2007). The typicality requirement is satisfied "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether the other class members have been injured by the same course of conduct." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

In this case, Plaintiff's claims and those Class Members are based on the same alleged course of conduct. Specifically, the claims that Defendant maintained a policy and practice of failing to pay all wages, provide compliant meal and rest periods, and as a result failed to provide accurate itemized wage statements and all wages at separation of employment. Further, Plaintiff and Class Members suffered similar injury (i.e. unpaid wages, meal and rest break premiums, etc.). Therefore, typicality is easily met in this matter.

### D.    Adequacy of Representation

The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *McGhee v. Bank of America* (1976) 60

Cal.App.3d 442, 450–51.)

Plaintiff and his counsel have fairly and adequately represented the proposed settlement class, and have vigorously prosecuted this action on behalf of the proposed settlement class.  Plaintiff and his counsel do not have any claims or interests which conflict or are antagonistic to the class.  The adequacy requirement is met where, as here, the class representatives' claims are sufficiently interrelated to and not antagonistic to the claims of the class.  (*Hanlon*, *supra*, 150 F.3d at p. 1020.)

The proposed Settlement Agreement requests enhancement awards of six thousand dollars ($6,000.00) to Plaintiff Gerardo Tellez upon approval by this Court.  Other than this payment, class counsel's attorneys' fees and costs, the settlement administrator's fees, and the payment to the LWDA for its share of the settlement of penalties, all of the Class Members will be entitled to a portion of the balance of the Gross Settlement Amount based on the formula as provided for in the Settlement Agreement. Thus, no "settlement allocation" questions are raised. (See *Hanlon*, *supra*, 150 F.3d at p. 1020.) Moreover, "[p]otential Plaintiffs are not divided into conflicting discrete categories," since they all claim additional wages for work they performed in California for Defendant. (See *Id.* at p. 1021.)  Finally, any class member who wishes to "opt out" of the Settlement may do so.  (See *Ibid.*) There is therefore no conflict of interest between Plaintiffs and the class members.

Furthermore, class counsel is an experienced wage and hour class action litigator and have diligently prosecuted this action. (See Declaration of Class Counsel, Kevin Mahoney). There is no evidence of antagonism between the proposed class representative, his attorneys, and the putative class, and even if there were, any putative class member who wishes to "opt-out" would be afforded the opportunity to do so.

Therefore, the requirements of Fed. R. Civ. P. 23(a) are met in this matter.

### E.    Conditional Certification Pursuant to FRCP 23(b)(3) is Appropriate as Common Questions Predominate

Under Fed. R. Civ. P 23(b)(3), a Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3).) This requirement is met in this instant matter.  When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620.) The manageability of trying the case as a class action is not a factor for a settlement-only class. (*Id.* at p. 620.)

Plaintiff, on behalf of himself and class members, seek among other things, unpaid wages, meal and rest break premiums, and derivative penalties. As detailed above, Plaintiff's allegations against Defendant raises common questions about the policies of Defendant, and the class members' potential legal remedies are identical. The proposed class in this case is sufficiently cohesive because, for purposes of the Settlement only, the parties agree that all class members share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, *supra*, 150 F.3d 1011, where the Ninth Circuit approved class certification under the standards set forth in *Amchem*.  The proposed Stipulated Class in this case is sufficiently cohesive to warrant adjudication by representation. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013). Thus, this class may be certified for settlement purposes.  Furthermore, the proposed Settlement herein is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## VII.    THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS

Federal Rules of Civil Procedure 23(e)(1)(B) provides that "[t]he court

must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. (Fed.R.Civ.P. 23(c)(2)(B).) The proposed Class Notice and Request for Exclusion Form are attached as Exhibit B and C of the Declaration of Kevin Mahoney, filed concurrently herewith.

In this case, the Parties propose that the Notice of the Settlement will be mailed via U.S. first-class mail to each Class Member's last known address. Defendant agree to provide the Settlement Administrator, within ten (10) calendar days following preliminary approval by this Court, a Class List compiled in good faith based on Defendant' records setting forth each Class Member's: (1) full name; (2) last known mailing address; (3) last known telephone number; (4) social security number; (5) date of birth; and (6) total number of work weeks worked during the Class Period.

The Settlement Administrator will perform a search on the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members.

Within seven (7) calendar days of receiving the Class List, the Settlement Administrator will send via first class mail the Court-approved Notice of Settlement to each Class Member. If a Notice of Settlement is returned because of an undeliverable address, the Settlement Administrator will conduct a skip trace to locate a current address.

The proposed Notice of Settlement provides information on the meaning and nature of the proposed Class; the terms and provisions of the Settlement; the relief the Settlement will provide to Participating Class Members; the applications of Plaintiff for their Service Awards and of Class Counsel for their attorneys' fees and costs; the payment to the LWDA of its share of the PAGA Award; the payment of the Settlement Administration Costs; the date, time and place of the

final settlement approval hearing; and the procedure and deadlines for opting out of the Settlement or for submitting objections to the Settlement. If a Class Member chooses to object to the Settlement, they will have forty-five (45) days to file with the Court and serve an Objection to the Agreement. Further, Class Members that choose to opt out of the settlement will have forty-five (45) days from the mailing of the Class Notice to postmark a Request for Exclusion.

The Notice of Settlement also fulfills the requirement of neutrality in class notices. It summarizes the proceedings to date, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the Manual's statement that "the notice should be accurate, objective, and understandable to Class Members." The Notice of Settlement clearly states that the Settlement does not constitute an admission of liability by Defendant, and recognizes that the Court has not ruled on the merits of the action. It also states that the final settlement approval decision has yet to be made. Accordingly, the Notice of Settlement complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. (See Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(c)(2); 23(e).)

## VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval; and Class Members or their counsel may be heard in support of or in opposition to the Settlement Agreement. The Parties propose that the final approval hearing be held on or after August 2021.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court make orders as to the following:

1.     Certifying for settlement purposes only a Class defined as all persons who are employed or have been employed by HLE in California as nonexempt employees at any time on or between June 9, 2016, to the date of preliminary approval of this settlement by the Court (the "Class Period");

2.     Preliminarily approving the PAGA Settlement Amount;

3.     Appointing GERARDO TELLEZ as Class Representative for settlement purposes;

4.     Appointing Plaintiff' Counsel, Kevin Mahoney and John Young of MAHONEY LAW GROUP, APC, as Class Counsel for settlement purposes;

5.     Approving Phoenix Class Action Administrators as Settlement Administrator;

6.     Approving the form and content of the Class Notice and Notice of Individual Settlement Share (collectively referred to as the "Notice Packet"), and directing the mailing of same;

7.     Approving the opt-out and objection procedures provided in the Settlement Agreement and set forth in the Notice of Settlement;

8.     Directing Defendant to furnish the Settlement Administrator within ten (10) calendar days after the Court grants preliminary approval of the Settlement the Class List, as defined in the Settlement Agreement, which shall be compiled in good faith from Defendant' records to include for each Class Member: (a) full name; (b) last known mailing address; (c) last known telephone number; (d) social security number; (e) date of birth; and (f) the total workweeks worked by each member of the Settlement Class during the Class Period; and

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES

9.    Setting a Final Approval Hearing


Dated: March 16, 2021                    **MAHONEY LAW GROUP, APC**

                                   By:    */s/ Kevin Mahoney*
                                          Kevin Mahoney, Esq.
                                          John A. Young, Esq.
                                          Attorneys for Plaintiff GERARDO
                                          TELLEZ as an individual and on
                                          behalf of all similarly situated
                                          employees

MEMORANDUM OF POINTS AND AUTHORITIES