Kevin Mahoney, Esq. (SBN: 235367)
kmahoney@mahoney-law.net
John A. Young (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814, Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400

Attorneys for Plaintiff GERARDO TELLEZ, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO TELLEZ, as an individual, and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>HARVEST LANDSCAPE ENTERPRISES, INC., a California corporation, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 20-CV-00438-GW-SK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Assigned to;<br>Hon. George H. Wu, Courtroom 9D<br><br>Date:        September 9, 2021<br>Time:        8:30 a.m.<br>Courtroom: 9D<br><br>Complaint  Filed: October 18, 2019<br>Trial Date:  None Yet Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 9, 2021 at 8:30 a.m. at the United States District Court for the Central District of California located at 350 W. 1st Street, Courtroom 9D, 9th Floor, Los Angeles, California, Plaintiff GERARDO TELLEZ ("Plaintiff"), individually and on behalf of those similarly situated will, and hereby move this Court, pursuant to the Federal Rules of Civil Procedure, Rule 23(e), for an order granting final approval of the class action settlement between Plaintiff and Defendant HARVEST LANDSCAPE ENTERPRISES, INC. ("HLE" or "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), memorialized in the Parties' Joint Stipulation for Class Action Settlement and Release ("Settlement Agreement"), and preliminarily approved by this Court on April 6, 2021. (Dkt. No. 47.)

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Kevin Mahoney in Support of the Motion; (4) the Declaration of Taylor Mitzner of Phoenix Settlement Administrators; (5) the Parties' Settlement Agreement; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this Action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: August 17, 2021          **MAHONEY LAW GROUP, APC**

By:     */s/Kevin Mahoney*
          Kevin Mahoney, Esq.
          John A. Young Klein, Esq.
          Attorneys for Plaintiff GERARDO
          TELLEZ as an individual and on behalf of
          all similarly situated employees

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................8

II.    FACTUAL AND PROCEDURAL BACKGROUND..................................10

A.    The Parties ........................................................................10

B.    The Class and Representative Action..........................................10

C.    Mediation and Settlement......................................................11

D.    Significant Discovery and Investigation Informally Conducted by the Parties 11

E.    Preliminary Approval of the Settlement.......................................12

III.    SUMMARY OF SETTLEMENT TERMS ....................................13

A.    Monetary Terms ................................................................13

B.    The Settlement Class and Class Period ......................................15

C.    The Settlement Distribution Formula...........................................15

D.    The Class Release................................................................16

IV.    THE NOTICE PROCESS ........................................................17

V.    SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE........................................................................19

A.    Legal Standards ................................................................19

B.    Final Confirmation of Class Certification is Appropriate...........................22

C.    Final Settlement Approval is Appropriate as the Settlement Agreement is Fair, Reasonable, and Adequate ........................................................22

1.    The Settlement is the Product of Arms' Length Negotiations...................22

2.    The Costs and Risks of Further Litigation Favor Approval of the Settlement ........................................................................24

3.    The Amount of the Settlement Favors Approval ........................26

4.    The Settlement Provides for Equal Treatment of Class Members.............28

5.    The Absence of Any Class Member Objection to the Settlement Agreement Supports Final Approval........................................................29

6.    Additional Rule 23(e) Factors ................................................30

VI.    CONCLUSION ........................................................................31

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Aftermarket Automotive Lighting Products Antitrust Litigation*
10, 2014, No. 09 MDL 2007-GW(PJWX)),
    2014 WL 12591624 .......................................................................... 28

*Altamirano v. Shaw Industries, Inc.*,
    (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372 ............ 27

*Atlas v. Accredited Home Lenders Holding Co.*
4, 2009, No. 07-CV-00488-H (CAB)),
    2009 WL 3698393 ........................................................................... 28

*Balderas v. Massage Envy Franchising, LLC*,
    (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945 .............. 26

*Behrens v. Wometco Enterprises, Inc.*,
    (S.D. Fla. 1988) 118 F.R.D. 534 ...................................................... 26

*Boyd v. Bechtel Corp.*,
    (N.D. Cal. 1979) 485 F.Supp. 610 .................................................... 29

*Chun-Hoon v. McKee Foods Corp.*,
    (N.D. Cal. 2010) 716 F.Supp.2d 848 ................................................. 28

*Churchill Village, L.L.C. v. General Electric*,
    (9th Cir. 2004) 361 F.3d 566 ....................................................... 8, 19

*City of Detroit v. Grinnell Corp.*,
    (S.D.N.Y. 1972) 356 F.Supp. 1380 .................................................... 26

*City of Detroit*,
    495 F.2d ....................................................................................... 27

*Ellis v. Naval Air Rework Facility*,
    (N.D. Cal. 1980) 87 F.R.D. 15 ......................................................... 29

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Greko v. Diesel U.S.A., Inc.*,
  (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602 .............. 24

*Hanlon v. Chrysler Corp.*,
  (9th Cir. 1998) 150 F.3d 1011........................................................ 9, 19, 20, 21, 30

*Harris v. Vector Marketing Corp.*,
  (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973 ............... 22

*In re Bluetooth Headset Products Liability Litigation*,
  (9th Cir. 2011) 654 F.3d 935........................................................................ 19, 22

*In re Pacific Enterprises Securities Litigation*,
  (9th Cir. 1995) 47 F.3d 373................................................................................ 29

*In re Zynga Inc. Securities Litigation*,
  (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171 ............ 22

*International Union of Operating Engineers-Employers Const. Industry Pension,
  Welfare and Training Trust Funds v. Karr*,
  (9th Cir. 1993) 994 F.2d 1426 ........................................................................... 15

*Lazarin v. Pro Unlimited, Inc.*,
  (N.D. Cal., July 11, 2013, No. C11-03609 HRL) 2013 WL 3541217................ 16

*Linney v. Cellular Alaska Partnership*,
  (9th Cir. 1998) 151 F.3d 1234........................................................................... 26

*Ma v. Covidien Holding, Inc.*,
  (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196 ......... 26

*Mandujano v. Basic Vegetable Products, Inc.*,
  (9th Cir. 1976) 541 F.2d 832............................................................................. 28

*Mora v. Harley-Davidson Credit Corp.*,
  (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743.............. 24

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  (C.D. Cal. 2004) 221 F.R.D. 523 ................................................................. 18, 28

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  (9th Cir. 1982) 688 F.2d 615 ............................................................ 19, 20, 25, 26

*Rodriguez v. West Publishing Corp.*,
  (9th Cir. 2009) 563 F.3d 948 ...................................................................... 22, 29

*Staton v. Boeing Co.*,
  (9th Cir. 2003) 327 F.3d 938 ............................................................................ 18

*Thieriot v. Celtic Ins. Co.*,
  2011 WL 1522385 (N.D. Cal. April 21, 2011) .................................................. 24

*Vasquez v. Packaging Corporation of America*,
  (C.D. Cal., Aug. 17, 2020, No. CV191935PSGPLAX) 2020 WL 6785650 ....... 16

*Velazquez v. International Marine and Industrial Applicators, LLC*
9, 2018, No. 16CV494-MMA (NLS)),
  2018 WL 828199 ............................................................................................ 23

Statutes

28 U.S.C. section 1442(a)(1) ....................................................................... 9

28 U.S.C. sections 1331 and 1441 (a) ......................................................... 9

28 U.S.C.A.(a) and 23(b)(3) ....................................................................... 8

29 U.S.C.A. sections 206 to 207 ................................................................. 9

California Business & Professions Code Sections 17200 ..................................... 15

Rules

Federal Rule of Civil Procedure 23, subdivision (a) ............................................ 11

Federal Rule of Civil Procedure 23, subdivision (b)(3) ........................................ 11

Federal Rules of Civil Procedure, rule 23 ............................................ 8, 18, 20, 21

Federal Rules of Civil Procedure, Rule 23(e) ................................................ Passim

Rule 23(a) and Rule 23(b)(3) .................................................................... 21

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Rule 23(e)(2) ................................................................................. 19, 20

Rule 23(e)(3) ................................................................................. 19, 20

Rule 23, subdivision (e) of the Federal Rules of Civil Procedure ..................... 7, 30

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff GERARDO TELLEZ ("Plaintiff") submits this memorandum in support of his unopposed Motion for Final Approval of Class Action Settlement ("Motion"). The proposed settlement reached by Plaintiff and Defendant HARVEST LANDSCAPE ENTERPRISES, INC. ("HLE" or "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), as memorialized in the Parties' Joint Stipulation for Class Action Settlement and Release ("Settlement Agreement"), is fair, adequate, and reasonable, and thus warrant final approval, for the reasons provided herein.

## I.    INTRODUCTION

The Parties[1] hereto have reached a settlement in this matter, which is subject to the final approval of this Court. Plaintiff requests that the Court grant final approval of the Parties' Settlement Agreement, pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The non-reversionary settlement amount of $624,817.52[2] is "fair, reasonable, and adequate" within the meaning of Rule 23(e). The Class includes approximately 1,591[3] individuals, comprised of all persons who are employed or have been employed by HLE in California as nonexempt employees ("Class Member(s)" or "Settlement Class Member(s)") at any time on or between June 29, 2016, to the date of preliminary approval of the settlement by the Court (the "Class Period"). Class Members stand to recover substantial and immediate monetary benefits under the settlement with an average estimated Gross Recovery of two hundred fifty-two dollars and ninety-two cents ($252.92) per Settlement Class Member. (Declaration of Taylor Mitzner

---

[1] All Capitalized terms appearing in this Memorandum that are not defined herein have the same meanings assigned to them as provided in the Parties' Settlement Agreement. (Mahoney Dec., Ex. A)
[2] At the time Plaintiff filed his Motion for Preliminary Approval of Settlement (Dkt. No. 42), the anticipated class size was 959. The $400,000 Gross Settlement Value was based on that class size. The Settlement Agreement included an "Elevator Clause" that contemplated an increase in the Gross Settlement Amount to account for an increase of the number of Class Members by more than ten percent (10%) as further discussed below. (*See infra* § III; Mahoney Dec., Ex. A, section 39.) The $624,817.52 Gross Settlement Amount accounts for the increase in class size to 1,591. (Mitzner Dec., ¶ 4.)
[3] *Ibid*.

("Mitzner Dec."), ¶¶ 12-14.)

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the risks of securing and maintaining class action status throughout the trial and on appeal. *See Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575–76 (citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal. Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed settlement, Class Counsel represents that the proposed settlement is in the best interest of the Class.

The response of Class Members to the proposed settlement has been very favorable to date. The claims period ended on August 2, 2021 and only six (6) Class Members opted-out of the one thousand five hundred ninety-one (1,591) Class Members. (Mitzner Dec., ¶ 9.) Perhaps, even more important, not a single Class Member has objected to any terms of the settlement. (Mitzner Dec., ¶ 10.) The lack of any objections and the fact that only six (6) Class Members have opted out indicate that the Class has a favorable view of the settlement. This factor, too, weighs in favor of final settlement approval.

In connection with requesting final settlement approval, Plaintiff also requests that the Court: (1) confirm as final the certification of the Class under Federal Rules of Civil Procedure, rule 23, 28 U.S.C.A.(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff as the class representative of the Class; and (3) enter the proposed final approval order and enter judgment. Plaintiff also requests the Court award Class Counsel's requested attorney's fees and costs in a separate motion filed concurrently herewith. Finally, while the

settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for his service to and risks taken on behalf of the Class, as provided on a separate motion filed concurrently herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant is a landscape management firm providing a full array of landscaping and design services.

Plaintiff and the Class Members worked for Defendant as non-exempt employees, performing various landscaping duties, such as landscape maintenance, gardening, tree-trimming, concrete and masonry work, amongst other responsibilities.

### B.    The Class and Representative Action

On October 18, 2019, Plaintiff filed a representative action pursuant to the California Private Attorneys General Act ("PAGA") in Orange County Superior Court, Case No. 30-2019-01105785-CU-OE-CXC. On February 28, 2020, Plaintiff filed an Amendment to his complaint to add claims for minimum wage and overtime violations pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C.A. sections 206 to 207. On March 3, 2020, Defendant removed the State action, Case No. 30-2019-01105785-CU-OE-CXC to this federal court based upon original jurisdiction under 28 U.S.C. sections 1331 and 1441 (a), and pursuant to the federal officer removal statute under 28 U.S.C. section 1442(a)(1) (Case No. 8:20-cv-00438-GW-SK) (Dkt. No. 1.)  On June 10, 2021, Plaintiff filed a Second Amended Complaint (Dkt. No. 17) (the "Operative Complaint") alleging the following class claims and representative claims: 1) failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"); 2) failure to pay overtime wages in violation of the FLSA; 3) failure to pay all wages in violation of the Labor Code; 4) failure to provide rest periods; 5) failure to provide meal

periods; 6) failure to keep accurate payroll records; 7) failure to pay wages upon ending employment; 8) failure to indemnify for expenditures or losses in discharge of duties; 9) unfair competition; and 10) violation of the Private Attorneys General Act ("PAGA"). (Declaration of Kevin Mahoney ("Mahoney Dec.") ¶ 4.)

### C.    Mediation and Settlement

On January 24, 2020, the Parties attended a full day of mediation with Christopher Barnes, Esq., a well-known and experienced wage and hour class action mediator. While the case did not settle at mediation, subsequently, following a mediator's proposal, the Parties agreed to the principal terms of this Settlement, which were subsequently formalized as a written "Joint Stipulation of Class Action Settlement and Release" ("Settlement Agreement" or "Agreement"), fully executed by the Parties on June 30, 2020. (Declaration of Kevin Mahoney ("Mahoney Dec.") ¶ 11, Exhibit ("Ex.") A.)

### D.    Significant Discovery and Investigation Informally Conducted by the Parties

The Parties engaged in informal discovery as a means of minimizing litigation costs, as well as fostering a cooperative dynamic ahead of the substantive negotiations. Defendant provided to Plaintiff a random sampling of documents, including, but not limited to time, and pay records for the putative class, HLE's written policies and handbook, and identified the number of employees comprising the putative class and/or aggrieved employees, as well as the relevant total workweeks and pay periods. (Mahoney Dec. ¶ 5.)

Using the above information and records, Plaintiff and his counsel were able to reasonably assess liability on the part of Defendant and the resulting value of damages, paving the way for the proposed settlement terms. (Mahoney Dec. ¶ 5.)

/ / /

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Further, HLE provided, on a confidential basis, information and documents relating to its financial status (including, balance sheets, a current valuation of Defendant by an independent accounting firm retained by Defendant, and corporate tax returns for 2017-2018.) In turn, Plaintiff retained his own expert to review and analyze these financial records, in order to assess the extent to which Defendant could fund a class action settlement. (Mahoney Dec. ¶ 5.)

Factoring Defendant's current value and profitability, its existing debt, and a prior class action against Defendant, for which a settlement was given final approval in June 2017 (*Renteria v. Harvest Landscape Enterprises, Inc.,* Orange County Superior Court, Case No. 30-2010-00432253-CU-OE-CXE), Plaintiff and his counsel determined that the agreed-upon sum of four hundred thousand dollars ($400,000.00) was a reasonable and appropriate gross settlement value for this instant action. (Mahoney Dec. ¶ 15.)

Additionally, HLE's current financial status, as demonstrated by the records provided, justified a thirty-month installment plan to fund the proposed settlement, as set forth in section 3A of the Settlement Agreement. (Mahoney Dec., ¶ 13, Ex. A.)

### E.    Preliminary Approval of the Settlement

On April 6, 2021, following supplemental briefings and a telephonic hearing, the Court granted Plaintiff's unopposed Motion for Preliminary Approval of the Class Action Settlement. (Dkt. No. 47.) Therein, the Court determined that the Settlement Agreement is "fair, just, and reasonable and, therefore, meet the requirements for preliminary approval . . ." (Dkt. No. 47.) The Court further found that, 'for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23, subdivision (a) and Federal Rule of Civil Procedure 23, subdivision (b)(3) are satisfied. (Dkt. No. 47.) The Court conditionally certified, for settlement purposes only, a "Class" consisting of the following:

/ / /

[A]ll persons who are employed or have been employed by HLE in California as nonexempt employees at any time on or between June 29, 2016, to the date of preliminary approval of the settlement by the Court (the "Class Period"). (Dkt. No. 47.)

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    Monetary Terms

The Settlement contained an "Elevator Clause" that provided an increase in the Gross Settlement Amount if the estimated class size of nine hundred fifty-nine (959) increased by more than ten percent (10%). (Mahoney Dec., ¶ 15, Ex. A, section 39.) The final class size is one thousand five hundred ninety-one (1,591). (Mitzner Decl., ¶¶ 3, 12.) To account for the increase in class size, the Gross Settlement Amount increased to six hundred twenty-four thousand eight hundred seventeen dollars and fifty-two cents ($624,817.52) as contemplated by the Elevator Clause of the Settlement Agreement. (Mahoney Decl., ¶ 15, Ex. A, section 39; Mitzner Dec., ¶ 4.) In consideration for the releases of all claims at issue, and adjusted to account for the increase in class size as contemplated by the Settlement Agreement's Elevator Clause, Defendant agrees to pay an amount not to exceed six hundred twenty-four thousand eight hundred seventeen dollars and fifty-two cents ($624,817.52) (the "Gross Settlement Amount"), excluding Defendant's side of payroll taxes (which Defendant will pay separately), as a full and complete settlement of all claims arising from the action by the Class. The Gross Settlement Amount shall be allocated as follows:

(1)    Settlement administration costs to Phoenix Class Action Administrators shall not to exceed fifteen thousand dollars ($15,000.00)[4] (Mahoney Dec., ¶ 24, Ex. A, section 40(d);

---

[4] The Court preliminarily approved Administration Costs in the amount of ten thousand dollars. (ECF Dkt. No. 47, ¶ 8.) The increase reflects the Administration Cost for the accurate number of Class Members (1591). (Mitzner Dec., ¶ 15, Ex. B.) The increase in Administrator Costs was contemplated by the Settlement Agreement. (Mahoney Dec., Ex. B, section 40(d).

Mitzner Dec., ¶ 15, Ex. B.);

(2)    A requested thirty percent (30%) of the Gross Settlement Amount or one hundred eighty-seven four hundred forty-five dollars and twenty-five cents ($187,445.26), and up to eight thousand dollars ($8,000.00) in litigation costs and expenses to Class Counsel;

(3)    A requested Enhancement Payment for Plaintiff as Class Representative in the amount of six thousand dollars ($6,000.00);

(4)    Ten thousand dollars ($10,000.00) from the Gross Settlement Amount allocated to the settlement of claims brought under the PAGA, of which a payment of seventy five percent (75%) or seven thousand five hundred dollars ($7,500) will be made to the LWDA for enforcement of labor laws and education of employers. The remaining twenty five percent (25%) or two thousand five hundred dollars ($2,500) will be distributed to PAGA Members in accordance with the terms of the Settlement (Mahoney Dec., Ex. A, Section 40.a.iv); and

(5)    The Net Settlement Amount, which is approximately four hundred thousand eight hundred seventy-two dollars and twenty-six cents ($400,872.26), inclusive of the PAGA Allocation, will be distributed in accordance with the terms of the Settlement. (Mahoney Dec., Ex. A, section 40.)

The Parties further agreed that the Gross Settlement Amount is non-reversionary. As such, one hundred percent (100%) the Net Settlement Amount will be paid to Settlement Class Members without the need to submit a claim.

/ / /

/ / /

### B.      The Settlement Class and Class Period

The Settlement contemplates a Class certified for settlement purposes comprising of "all current and former non-exempt employees of Defendant who performed any work in California in any nonexempt hourly position at any time during the Class Period." (Mahoney Dec. Ex. A.) The Class Period is defined as June 29, 2016 to the Date of the Preliminary Approval of the Settlement, April 6, 2021. (Mahoney Dec. Ex. A) The Court granted preliminary approval of the Settlement, including the definition of the Class and Class Period as defined herein, on April 6, 2021. (Dkt. No. 47.)

### C.      The Settlement Distribution Formula

The Net Settlement Amount shall be apportioned among Settlement Class Members based on each of their respective number of Work Weeks worked during the Class Period.  The Settlement Administrator will divide the Net Settlement Fund by the total number of Work Weeks during the Class Period to create a per-week dollar figure for every week worked by Class Members. The Settlement Administrator will then multiply the number of Work Weeks for each Class Member by the per-week dollar figure to calculate each Class Member's Individual Settlement Payment. (Mahoney Dec., Ex. A, section 40(e)(ii).)

Based on the estimated Net Settlement Amount of four hundred thousand eight hundred seventy-two dollars and twenty-six cents ($400,872.26) the average will be two hundred fifty-two dollars and ninety-two cents ($252.92). (Mitzner Dec., ¶ 14.) This recovery on behalf of Class Members is well in excess of amounts that have been approved on the low end of the range of wage and hour settlements in California state and federal courts. (*See, e.g., Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, No. BC392297 (L.A. Super. Ct.) (average net recovery of

approximately $20); *Delgado v. New Albertson's, Inc.*, No. SACV08-806 DOC-
RBNx (CD. Cal.) (average net recovery of approximately $45.)

**D.    The Class Release**

As of the full funding of the Gross Settlement Fund, each Participating
Class Member, on behalf of himself or herself and his or her heirs and assigns,
releases Defendant from the following claims for the entire Class Period (from
June 9, 2016, through April 6, 2021): any and all claims *reasonably related* to
claims in the Action, including but not limited to state and/or federal wage and
hour claims (including all claims under the California Labor Code and the Fair
Labor Standards Act) for unpaid wages, unreimbursed business expenses,
minimum wage, overtime, off-the-clock work, meal periods, rest periods, wage
statement violations, interest, penalties, and attorneys' fees, waiting time
penalties, withholding from wages and the related provisions of the Labor Code
including but limited to Labor Code sections 201, 202, 203, 204, 210, 216, 218.6,
226, 226.3, 226.7, 510, 512, 516, 558, 1174, 1194, 1198, 2698 *et seq.*, and 2802,
derivative claims under California Business & Professions Code Sections 17200 *et
seq.* and all claims under the Wage Order, and the Private Attorneys General Act
of 2004, Labor Code section 2698 *et seq.* ("PAGA"); and any and all claims that
were or could have been asserted based on the facts pleaded in the Complaint or
any amendments thereto for any purported violation of any local, state, or federal
wage and hour laws, regulations, and/or ordinances, including such laws,
regulations, and/or ordinances related to the non-payment of wages, minimum
wages, overtime wages, or any other wage-related or recordkeeping-related
claims; liquidated damages; attorneys' fees, costs and expenses; pre- and post-
judgment interest; or damages or relief of any kind arising from the allegation that
the Class Members were not properly compensated for all time worked on a daily
or weekly basis, under state or federal law, at any time through Preliminary
Approval. (Mahoney Dec., Ex. A, section 43.)

The releases provided in the Settlement Agreement are directly related to Plaintiff's claims and are therefore appropriate. *See International Union of Operating Engineers-Employers Canst. International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr* (9th Cir. 1993) 994 F.2d 1426, 1430 ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action"). Further, the Parties included an FLSA waiver in the "Notice of Settlement of Class Action" ("Notice") mailed to Class Members on June 18, 2021 as further discussed below, stating that Settlement Class Members who cash and/or endorse their settlement checks will be deemed to have opted into the action for purposes of the federal Fair Labor Standards Act ("FLSA"). (Mahoney Dec., Ex. A; Mitzner Dec., ¶ 6, Ex. A, p. 4.) District Courts have approved of cashing-the-settlement-check method of opting-in to an FLSA collective action at final approval. *See, e.g., Vasquez v. Packaging Corporation of America* (C.D. Cal., Aug. 17, 2020, No. CV191935PSGPLAX) 2020 WL 6785650, at *6 (finding that the settlement agreement is adequate at final approval as it contains a proper FLSA waiver); *Lazarin v. Pro Unlimited, Inc.* (N.D. Cal., July 11, 2013, No. C11-03609 HRL) 2013 WL 3541217, at *9 (granting final approval of settlement where class members opt in to the FLSA claims and release their claims under the FLSA by cashing their settlement checks).

## IV.    THE NOTICE PROCESS

### A.    Notification to the Class

On April 6, 2021, the Court appointed Phoenix Class Action Administrators ("Phoenix") as the Settlement Administrator pursuant to the terms of the Settlement Agreement and carry out the Settlement according to the terms of the Settlement Agreement. (Dkt. No. 47.) On June 18, 2021, Phoenix mailed the Notice Packet via U.S. first class mail to all one thousand five hundred ninety-four (1,594) Class Members on the Class List. (Mitzner Dec., ¶ 6, Ex. A.)

As of August 9, 2021, one hundred ten (110) Notice Packets have been returned to Phoenix. (Mitzner Dec., ¶ 7.) Two (2) Notice Packets were returned with a forwarding address and promptly re-mailed. (Mitzner Dec., ¶ 7.) For the one hundred eight (108) Notice Packets returned without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. (Mitzner Dec., ¶ 7.) Of the one hundred eight (108) Notice Packets that were skip traced, eighty (80) updated addresses were obtained and the Notice Packet was promptly re-mailed to those Class Members via first class mail. (Mitzner Dec., ¶ 7.) As of August 9, 2021, thirty (30) Notice Packets are considered undeliverable as an updated address could not be obtained via skip tracing. (Mitzner Dec., ¶ 8.)

**B.     Request for Exclusion, Objections, and Disputes**

The deadline for Class Members to submit an Opt-Out as provided in the Notice was August 2, 2021. (Mitzner Dec., Ex. A, p. 3) Phoenix received a total of six (6) timely and valid Requests for Exclusion ("Opt-Out(s)"). (Mitzner Dec., ¶ 9.) As of August 9, 2021, one (1) late Opt-Out was received after the August 2, 2021 deadline. (Mitzner Dec., ¶ 9.)

The deadline for Class Members to submit an Objection to the Settlement as provided in the Notice was August 2, 2021. (Mitzner Dec., Ex. A, p. 3) Phoenix received zero (0) Objections to the Settlement. (Mitzner Dec., ¶ 10.) Finally, Phoenix did not receive any disputes from Class Members. (Mitzner Dec., ¶ 11.)

**C.     Total Participating Class Members**

On July 26, 2021, Defense Counsel informed PSA and Plaintiff's Counsel that three (3) individuals in the data were exempt employees and should not remain in the class. (Mitzner Dec., ¶ 12.) After removing the exempt employees and six (6) Opt-Outs, there are a total of one thousand five hundred eighty-five (1,585) Participating Class Members. (Mitzner Dec., ¶ 12.)

18

## V.  SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e). The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(1). Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(4)-(5). A court may only approve a binding settlement after a hearing, and on finding that the settlement is fair, reasonable, and adequate. Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e)(2).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 525. This step has already been completed here, as the Court preliminarily approved the settlement on April 6, 2021. *See* Amended Order Granting Preliminary Approval of Class Action Settlement, ECF Dkt. No. 47.

Second, after notice is given to Class Members, a court must determine whether final approval is warranted. *National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 525. To grant final approval, the court must find that the proposed settlement is fair, adequate, and reasonable. *See Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 (citing *Hanlon*, *supra*, 150 F.3d at p. 1026). In making this determination, the court may consider any or all of the following factors:

(1)  the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C.*, *supra*, 361 F.3d at p. 575; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625; *Hanlon*, *supra*, 150 F.3d at p. 1026. This list is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, *supra*, 688 F.2d at p. 625. Where a settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. (*See In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47.)

Under recent amendments to the Federal Rules of Civil Procedure, district courts must also consider a list of factors delineated in Rule 23(e)(2), which bear similarities to the Ninth Circuit's longstanding factors and considerations:

(2) Approval of the Proposal. If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
  (A) the class representatives and class counsel have adequately represented the class;
  (B) the proposal was negotiated at arm's length;
  (C) the relief provided for the class is adequate, taking into account:
      (i)  the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats Class Members equitably relative to each other.

The Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e)(2) Advisory Committee's Notes to 2018 Amendments. In recognizing these, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id. As such, to the extent possible, the Court should apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court should also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors ... distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." (Id.)

Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. *See, e.g., Officers for Justice, supra*, 688 F.2d at p. 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"). While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Ibid.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon, supra*, 150 F.3d at p. 1026. "Settlement is the offspring

21

of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at p. 1027.

## B.     Final Confirmation of Class Certification is Appropriate

The Court preliminarily certified the Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the representative for the Class, and appointed Plaintiff's attorneys as Class Counsel. (Dkt. No. 47.) The Court found, for purposes of settlement, that the Class meets all of the requirements under Rule 23(a) and Rule 23(b)(3) to maintain this Action as a class action.

Notice of the class action was directed to all Class Members in a form and manner that complied with Rule 23. (*See supra* § IV.) As noted above, Class Counsel is not aware of any objections by any Class Member to any aspect of the proposed Settlement Agreement, and only six (6) of the one thousand ninety-one (1,591) Class Members opted out. The deadline for opting out of, or objecting to, the Settlement Agreement was August 2, 2021 which has now passed.

For these reasons, and for the reasons set forth in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 42), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff as the Class Representative.

## C.     Final Settlement Approval is Appropriate as the Settlement Agreement is Fair, Reasonable, and Adequate

### 1.     The Settlement is the Product of Arms' Length Negotiations

As discussed more extensively in Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 42), as well as in Plaintiff's Motion for Attorney's Fees ("Fees Motion") concurrently filed herewith, (1) Class Counsel are highly experienced in class action wage and hour litigation; (2)

Plaintiff and Defendant conducted significant discovery, investigation, and motion practice that allowed Class Counsel to act intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at the settlement through arms-length bargaining involving competent and experienced counsel, and only after a full day of mediation with an experienced mediator. *See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Securities Litigation* (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171, at *9 (holding that the parties' use of mediator and the fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Marketing Corp.* (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.").

Finally, none of the "subtle signs of collusion" that the Ninth Circuit has warned of are present here. *See e.g. In re Bluetooth Headset Products Liability Litigation*, *supra*, 654 F.3d at p. 947. Settlement Class Members will be receiving monetary distribution commensurate with their pro rata share of the Settlement Fund, and based upon the number of Work Weeks they have worked for Defendant. (Mahoney Dec., Ex. A, section 40(e).) Further, Class Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed thirty percent (30%) of the Gross Settlement Amount to compensate them for the services they have rendered on behalf of the Settlement Class Members. (*See generally*, Motion for Attorneys' Fees and Costs.) The award of attorneys' fees is separate from the approval of the Settlement, and neither Plaintiff nor Class

23

Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. Moreover, there is no indication of a "clear sailing" arrangement, or an arrangement for unawarded fees to revert to Defendant rather than the Class Members. (Mahoney Dec., Ex. A, section 40(a).) The Settlement is not a claims-made settlement. It is an all-in, non-reversionary settlement. Upon the occurrence of the Effective Date, no Defendant, Releasee, or any other person or entity who, or which, paid any portion of the Settlement shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever. (*See, e.g.,* Mahoney Dec., Ex. A, section 70.) As such, this factor weighs in favor of final approval.

### 2.    The Costs and Risks of Further Litigation Favor Approval of the Settlement

The Court must "balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." (*Velazquez v. International Marine and Industrial Applicators, LLC* (S.D. Cal., Feb. 9, 2018, No. 16CV494-MMA (NLS)) 2018 WL 828199, at *4.)

Plaintiff is convinced of the strengths of his claims. However, Defendant is equally adamant about the strength of its defenses. Plaintiff's claims and Defendant's defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiffs' claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in Plaintiff's Motion for Preliminary Approval and the Declarations filed in support thereof (Dkt. Nos. 42, 43, and 44), while this is a strong case for class certification and for maintaining class status through trial, there is substantial risk that Plaintiff and the Class would not prevail on the merits should this case proceed to trial. At the very least, litigating these

issues would require additional costly and complicated discovery, summary judgment practice, and, in all likelihood, trial. Whether Plaintiff would prevail remains uncertain, and appeals would almost certainly follow any ruling by this Court.

By contrast, the Settlement provides excellent recoveries to class members now without that uncertainty and delay and or Defendant's insolvency. In Class Counsel's extensive experience litigating similar cases, Class Counsel understands and appreciates the risks and uncertainties facing the claims of Plaintiff and the Class, which weigh in favor of settlement approval. Whatever the strength of the claims, Plaintiff nonetheless face numerous obstacles to recovery, including likely challenges to the use of representative testimony and expert witnesses to establish class-wide liability and aggregate damages, challenges to Plaintiff's methodology for calculating damages and penalties, and having to defeat Defendant's defenses. It is especially true here where Defendant denies liability, and when a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.* (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743, at *4 (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.* (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602, at *4 ("[E]ven with a strong case, litigation entails expense.").

Further, despite the suitability of this matter for class treatment, the litigation regarding class certification would also have been expensive and time-consuming. Assuming the Court certified a class action for trial, Defendant could have appealed from a class certification order, which might have delayed the proceedings considerably and been very expensive. Additionally, if this case had

proceeded to trial, the time and expenses associated with trial preparation would have been considerable. A class action trial in this case would be manageable, but it would also be complex, expensive, and extremely time-consuming. Even if Plaintiff obtained a favorable verdict and judgment on their claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendant was to appeal.    Taken together, these considerations support approval of the settlement.

### 3.    The Amount of the Settlement Favors Approval

The Court must weigh the risk to Plaintiff against the value of the Settlement. *Officers for Justice*, *supra*, 688 F.2d at p. 625. The Settlement provides for a $624,817.52 Gross Settlement Amount, and no less than $400,872.26 Net Settlement Amount once the Administration costs, litigation costs requested, attorneys' fees requested, enhancement award requested, and LWDA's portion of the PAGA allocation have been deducted. (Mitzner Dec., ¶ 13.) Class Counsel request attorney's fees of no more than thirty percent (30%) of the Gross Settlement Fund, or one hundred eighty-seven thousand four hundred forty-five dollars and twenty-six cents ($187,445.26). Class Counsel also seek reimbursement of no more than eight thousand dollars ($8,000) in litigation expenses incurred by Class Counsel.

Plaintiff estimated Plaintiff's full exposure at trial based on the reasonable valuation of the case at the time of preliminary approval would have been $950,224.01, excluding PAGA penalties and interests, and attorneys' fees and costs. (DKT. 43 Mahoney Dec., ¶¶ 24-26.) The estimate assumed that the number of Class Members was approximately 959, that Plaintiff would fully prevail on each of his claims at both class certification and after a jury trial, that the Court would certify the same class period as the Settlement Class Period, that the Court and a jury would accept Plaintiff's damages theory. The Gross Settlement Amount of four hundred thousand ($400,000.00) as originally contemplated by the Parties

represents approximately 42% of the reasonable value of the case. (DKT. 43 Mahoney Dec., ¶ 24.) The Parties contemplated a potential increase in Class Members and to account for the potential increase and ensure this settlement was reasonable the Parties agreed to an Elevator Clause in the Settlement Agreement wherein the Gross Settlement Amount has increased to six hundred twenty-four thousand eight hundred seventeen dollars and fifty-two cents ($624,817.52) to account for the increase in class size.  Wherein the class size did increase from nine hundred fifty-nine (959) to one thousand five hundred ninety-one, (1,591). (Mahoney Dec., ¶ 15, Ex. A, section 39; Mitzner Dec., ¶ 4.)  Accordingly, based on the contemplated increase in class size and the corresponding increase in the Gross Settlement Value, Class Counsel maintains that this settlement is fair, adequate, and reasonable. (Mahoney Dec., ¶ 15.)

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, *supra*, 688 F.2d at p. 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242. Courts have routinely determined that class settlements, like the one reached here, are, reasonable even where Plaintiff recovers only a portion of their total potential recovery. (*See e.g. Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 542 "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."]) Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." (*Ibid.*; see also *City of Detroit v. Grinnell Corp.* (S.D.N.Y. 1972) 356 F.Supp. 1380, 1386; *Ma v.*

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Covidien Holding, Inc.* (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196, at *5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC* (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945, at *5 (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial). In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit*, *supra*, 495 F.2d at p. 463.

Therefore, the $624,817.52, Gross Settlement Amount is well within the range of reasonableness, and this factor cuts in favor of final approval.

### 4.    The Settlement Provides for Equal Treatment of Class Members

The settlement proposed by the Parties reflects no significant indication of preferential treatment. As described in the Proposed Notice:

> Settlement Class Members (Class Members who do not timely exclude themselves from the Settlement) will be paid their pro-rata share of the Net Settlement Sum, calculated as follows: The Settlement Administrator will calculate the number of total Work Weeks each Settlement Class Member was employed by Defendant during the Class Period. Work Weeks will be calculated according to Defendant's records and will be calculated based on the Gross Settlement Amount of six hundred twenty-four thousand eight hundred seventeen dollars and fifty-two cents ($624,817.52).

(Mitzner Dec., Ex. A, p. 2; *see also* Mahoney Dec., Ex. A, section 40(e)(2).) The Court previously expressed concern that there could be a commonality shortcoming with respect to the "failure to indemnify for expenditures or losses in discharge of duties" claim. (*See* April 1, 2021 Minute Order, ECF Dkt. No. 46.) However, the Parties have explained that this claim is of little to no value. (*See* Declaration of Bill Tomasoff in Support of Plaintiff's

Unopposed Motion for Preliminary Approval of Settlement, Dkt. No. 44.) Any amount associated with this claim would be de minimis, and the value associated with any legitimate reimbursement claim would be fairly and adequately compensated based on the distribution plan which compensates Class Members based the length of their employment. *See, e.g.*, *Altamirano v. Shaw Industries, Inc.* (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372, at *8 (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). As the settlement proposed by the Parties reflects no significant indication of preferential treatment, this factor cuts in favor of final approval.

### 5.    The Absence of Any Class Member Objection to the Settlement Agreement Supports Final Approval

There have been no objections by Class Members to the Settlement despite the Notice being sent to 1,564[5] Class Members. (Mitzner Dec., ¶ 10.) "[T]he absence of any objections to the Settlement Agreement among Class Members supports final approval." *In re Aftermarket Automotive Lighting Products Antitrust Litigation* (C.D. Cal., Jan. 10, 2014, No. 09 MDL 2007-GW(PJWX)) 2014 WL 12591624, at *3. Even in cases where objections are made, it is recognized that a small number of objections indicates a favorable class reaction. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 526 (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *Atlas v. Accredited Home Lenders Holding Co.* (S.D. Cal., Nov. 4, 2009, No. 07-CV-00488-H (CAB)) 2009 WL 3698393, at *4 (recognizing that only two class members submitted objections to the plan of allocation in deciding to approve the

---

[5] This number was reached by subtracting the 30 Notice Packets considered undeliverable. (Mitzner Dec., ¶ 8.)

plan of allocation); *see also Mandujano v. Basic Vegetable Products, Inc.* (9th Cir. 1976) 541 F.2d 832, 837.

Moreover, only six (6) Class Members–less than 1%–opted out of the Settlement. This overwhelmingly positive reaction of the class strongly supports final approval of the settlement. *See Chun-Hoon v. McKee Foods Corp.* (N.D. Cal. 2010) 716 F.Supp.2d 848, 850 (granting final approval where 16 of 329 class members opted out, explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class reaction).  In addition, this Court should similarly find that the lack of objections from class members, and the significantly small number of opt-outs, weighs in favor of granting final approval.

### 6.    Additional Rule 23(e) Factors

The judgment of experienced counsel regarding the settlement is entitled to great weight. (*Hanlon*, *supra*, 150 F.3d at p. 1026; *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F.Supp. 610, 622; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18.) Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." (*Rodriguez*, *supra*, 563 F.3d at p. 967 (*quoting In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378).) Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendant's counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one.

Further, as discussed in the Fees Motion filed concurrently herewith, the proposed attorneys' fees of thirty percent (30%) of the Gross Settlement Fund to be reasonable in light of the risk involved in this litigation, the work performed by Class Counsel, and the fact that there were no objections to this amount. Moreover, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on a ruling

30

regarding attorneys' fees. (Mahoney Dec., Ex. A, section 40(a); *see also* Fees Motion.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

## VI.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of the claims that meet the requirements of final approval pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The Parties thereby request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and class action designation of the Settlement.

Dated: August 17, 2021                    **MAHONEY LAW GROUP, APC**

By:    */s/ Kevin Mahoney*
       Kevin Mahoney, Esq.
       John A. Young, Esq.
       Attorneys for Plaintiff GERARDO
       TELLEZ as an individual and on
       behalf of all similarly situated
       employees

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT